Ms. Hurlitz-Ferguson with the court's permission. And she's going to be doing the argument? She'll be doing the argument, yes. Okay, thank you. Welcome. Take your time. We're just getting set up anyway. Whenever you're ready. Your Honor, and may it please the court, my name is Bianca Hurlitz-Ferguson and I represent the appellant in this case, Mr. Funk. I'd like to reserve three minutes for rebuttal. That's fine. Thank you. Thank you. The district court erred in dismissing Mr. Funk's habeas petition for two reasons. First, both the district court judge and magistrate judge materially misunderstood the nature of Mr. Funk's claims. Like the state PCRA court below, the district court completely overlooked the multiple and distinct episodes during which counsel deprived Mr. Funk of effective assistance. Instead, the court simply assessed whether the Commonwealth's plea offer was ever conveyed to Mr. Funk. And as I'll explain, there were in fact three separate episodes in which counsel was deficient in different ways. And second, the district court misapplied clearly established law set out in Strickland, Hill, Frye, and other cases, which makes clear that the Sixth Amendment requires defense counsel to do more than simply convey a plea offer. Just trying to get some facts straight here. You argue that there were three separate instances of ineffective assistance of counsel. Is that correct? Correct. And the first occurred when the DA and Mr. Souters met privately without Mr. Funk in July of 2000. Is that correct? That is correct, Your Honor. But did Mr. Funk himself argue before the state court or district court that there was any private meeting that he did not attend in July of 2000? No, Your Honor. The best advice we have for Funk not being present for the July offer is the fact that he did not take the offer. So we know that District Attorney Johnson, in fact, had that meeting with Souters, conveyed the offer. He confirmed that Mr. Funk was not present for that meeting. And this is exactly the offer that our client was looking for. He was willing to plead only to one count. This was a favorable offer, as District Attorney Johnson even testified to. And the fact that our client did not take this offer is evidence that this offer was not conveyed to him. There's nothing here to the contrary. Well, one thing to the contrary is the state court made a finding of fact that Souters was credible when he said he conveyed all offers to Funk. How do you get around that? There was contrary testimony, and the judge chose the credibility of Souters. Yes, Your Honor. And even if we were to take Souters at his words, in this case, that doesn't cure the constitutional deficiencies. In particular, we don't need to rely solely on the July offer. In fact, I will bring your court's attention to the fact that the Commonwealth does not challenge our understandings of the facts at all. But even if we do take Souters at his word, this doesn't cure the deficiency as to the second and third offers, which I'd like to turn my attention to. So in addition to the July offer where Funk did not receive the information, we have the December during trial offer. I almost wonder if, based on the testimony, that Mr. Funk is melding the purported July offer with the December offer, because it seems like Souters and the DA are fairly consistent with what took place on December. I'm not even sure that was there was there a formal was there any kind of July offer and was it formal? Yes, Your Honor. And we are here relying on District Attorney Johnson's testimony based on his his notes that memorialize the fact that on July 6th, District Attorney Johnson met with suitors about this first offer. What's what is perhaps unclear is, is whether this was ever conveyed to Funk. No, it was conveyed to Funk because the state judge and the state suitors testified he conveyed all offers to Funk and the court made a finding of fact that Souters was credible. So you can't keep challenging that. You have to accept that, right? Your Honor, we can perhaps move on from the July offer and accept that perhaps that wasn't, we don't have enough information that we refute that. You understand what I'm challenging. Twice now you've said offers weren't conveyed. And my response is that's impossible on this record because under our standard of review, the fact that Souters was found credible when he testified he conveyed all offers to Funk, that's a baked in fact that neither you nor any of us can change. Correct? Perhaps that it was conveyed, that a plea offer was conveyed to Mr. Funk at some point. All plea offers, you said. All plea offers, but we contest that in the sense that it wasn't the correct offer. And that's why it's important to also look to the second and third. What I'm getting to is, and you don't have to agree with me, obviously, but what I'm getting to is I think your argument is more suited toward the quality of what was conveyed to Funk, not the fact of the offer being conveyed. Am I wrong on that? That is correct. But two points on that, because we think that at no point did Mr. Funk actually receive the information that he needed. And so is that Fry or is that Lafla? I mean, your ability to kind of to say Fry is a lot of those findings have been made by the state PCRA court. I mean, I don't know that you're going to meet the evidentiary standard at this stage to flip those findings. And the briefing below seemed to focus on Fry, not Lafla. So it seems strange to come now when the case was presented largely as a Fry case on a record that supports the Fry findings, change gears into a Lafla case. Your Honor, we think with regards to the July offer and to the December offer, this is a clear application of Fry where the offer was, in fact, not communicated. And I'll move on to the December offer because perhaps that is more clear. The bottom line is he didn't accept the July offer for whatever reason, right? Would you mind repeating? The bottom line is he did not accept the July offer for whatever reason. Correct. We can move on to December. Thank you. In December, so sorry if I may back up a little bit. We think that the court below erred by not disentangling these offers. And we think that's really important here because there are different deficiencies. So in the December offer, suitors misstated the terms by conveying to Funk that he had to plead to all counts. When, in fact, that was not the offer on the table. It's ambiguous. It's interesting, right? He said it was open. An open could mean it was still available. An open could mean it had to be an open plea. Do we know which? That is an open plea to all counts. Right. One or the other. I'm just not sure which one it is. Correct. And we acknowledge that there are at least two plausible readings here with regards to that term. And it's also plausible that suitors used the term in a manner consistent with the judge's policy as well as state law. However, even assuming that he meant that the offer remained available, that does not cure the deficiency, as he never told Mr. Funk that, in fact, it was only to one count. And what's really important here is the judge's policy, so that the judge, in this case, required any pleas entered into after jury selection to be open to all counts. And that was waived. And this information was never communicated to Mr. Funk. And that's really important here. So at the third offer, he still did not have that information, which was necessary. And, again, respondents do not seem to challenge that. Didn't the record indicate that the judge said he was willing to alter his standard policy about open pleas? Yes, Your Honor. But your argument is that the fact that the judge said that was never conveyed to Funk. Exactly. And that goes to our second argument where the district court misapplied clearly established law that makes clear that counsel has duties beyond just conveying a plea offer. And this came up in the second offer. So Frye says that counsel must promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney and must not allow the offer to expire without advising the defendant. And the Supreme Court has made clear in cases like Hill and Padilla that the duty to explain a plea offer includes providing tailored advice on matters that the attorney has reason to know are of particular importance to the defendant. And so it was clearly established at the time of the PCRA court's decision, and even at the time of Funk's criminal trial, that suitors had a duty in the situation not only to convey the offer, but also to explain it and provide advice on how it aligned. But let me go back to my prior question. I mean, if I recall right, Frye and Laffer decided close in time, roughly same day maybe even. But I think that they're distinct cases, and they stand for distinct points of law. One is that you have to communicate the offer, and the other is that you have to give advice about the offer. That's how I understand it. That might be oversimplified. But this case, as I understand, its entire procedural history was about communications, not advice. And the question of what a judge's policy is and everything like this might be different than just simply communications. That might go into the Laffer space of advice. But this case has been from the outset a Frye case, not a Laffer case. So it seems a little strange now, as I said earlier, to change gears and say, aha, we had clearly established law, Laffer, and cases like Laffer, when the issue from the outset seems to have been there was a Frye issue that I didn't know the offer was out there. What do you say to that? Your Honor, we the way we understand Frye is that Frye does, in fact, talk about communication. And part of communication is explaining the offer. That is precisely why the court in Frye emphasizes that communication and explanation is necessary. So, so is so is so is Laffer necessary after Frye? I mean, what's the point is Laffer just tag along? What's the point of Laffer if Frye requires communication of the offer and advice regarding the significance of the offer? I thought those cases kind of stood for different propositions. Consistent, they're consistent with each other, but they're also distinct. Your Honor, they are distinct. And what's important in Laffer is that all parties in that case conceded that counsel was constitutionally deficient in misadvising the client. We think that that also applies to our case here. But Laffer also goes to sort of emphasizing the prejudice prong and the remedy. So I hope that answers your question. We think, again, that it was clearly established that at the time of the piece various decision, that suitors had a duty in this situation to not only convey the offer, but to explain it and to provide advice on how to align with Fung's goal of not pleading to certain counts. So the December pretrial offer, the judge had said that he would waive the open. That is, you have to plead to all counts. He would waive it in this instance if it was prior to the jury being assembled and trial starting. And so Fung knew this, that the open plea policy had been waived. He's claiming, however, that no one explained to him what this meant. Is that correct? No, Your Honor. So Fung did not, in fact, know that the policy was waived. District Attorney Johnson and Mr. Suitors met with the judge to have him to ask if he would waive this policy, which he, in fact, did. They then met with Mr. Fung, and no one, in fact, communicated that the judge waived the policy. And this, we argue, is sort of the root of the deficiency. And was there testimony from Suitors and the DA about that? Was there any testimony from Mr. Suitors and the DA about that? That it was never. That the open plea waiver by the judge in this particular case had been waived? Yes, Your Honor. I would point you to. You can do that on rebuttal. Okay.  I apologize. Let me just follow up on it. If the communication that was made was 6 to 8 and it's still open, I think that did something along those lines. And the still open has a certain ambiguity to it, as you've already acknowledged. But once someone says 6 to 8, can it still be an open plea? Your Honor, so in this case, the Commonwealth offered 8 to 20 for one count. But our client knew about the judge's policy from prior counsel, made very clear that he would not plead to all counts. And his understanding was that if they went to the judge, he would reject this offer. So for all he knows, he's not an attorney. He doesn't know what this means. And that was precisely what his counsel was required to advise him on, that 8 to 20 to one count really did mean 8 to 20 to one count because the judge in this fact was willing to waive the policy. All right. Let's just go to the third instance of alleged ineffectiveness, the offer supposedly made during trial. Why don't you address that? Yes, Your Honor. So during trial, Souters misstated the terms by conveying to Funk that he had to plead to all counts. Well, I mean, Funk said he realized that Souters, he didn't think Souters was up to the task and he was trying to sort out options. And he claims he asked Souters if Souters then made, if the one count 8 to 20 plea offer was still open, which is kind of interesting because on the second instance, he wasn't explained to him that it was just one count. But now he's saying that it is one count, 8 to 20 plea offer. And then he alleges that Souters made an error that was even more significant. He affirmatively gave Funk misinformation that even though the judge had already waived the open plea policy, he wouldn't do so here. That makes sense, does it not? Because the judge had said he waived the open plea policy between up until the jury was convened. Isn't that correct? That is correct, Your Honor. So there really isn't a third instance of alleged, there isn't really a third instance of ineffectiveness if the judge's waiver ceased to exist the minute the trial started? Yes, Your Honor, but again, this information was never communicated to Mr. Funk. In fact, it was not even, he did not find out that the judge in fact waived the policy until a conversation with District Attorney Johnson in 2011, which led to him actually amending his PCRA petition. Why did Funk then ask Souters if he could still accept the one count 8 to 20 plea offer if he didn't think that it was one count? He was asking about it, and 8 to 20 one count offer is the terms that... If he could still accept. Right, Your Honor. So in other words, he had to understand that previously it had been offered to him. Right, and it was in fact. We don't dispute that he heard from District Attorney Johnson that the Commonwealth was offering 8 to 20. What he didn't understand still was how the judge's policy came into play, and once he understood from Souters, based on whatever he conveyed, that he had to plead to all counts, that was again off the table because of his particular emphasis on not pleading to certain counts. Wait a minute. If his key concern, his key objection is that he was pleading guilty only to one count, and now at trial he asks if he could still accept the one count 8 to 20 year sentence, a plea offer. It sounds to me like he understood that previously he had been made a plea offer of one count 8 to 20 years, and he had accepted or he understood it, not accepted, understood it. Perhaps, Your Honor. We still think that the record doesn't make clear that the policy waiver was communicated to him at the relevant point, and in particular we think it's very clear here that if he is reaching over to Souters during trial and asking about whether this is on the table and whether it is in fact for one count, and Souters comes back and says he has to plead to all counts, that again this is further emphasis that he was never made clear of the policy and did not understand that he would be able to actually plead to only one count. Was there any finding made by the state court in connection with this? No, Your Honor, and this goes back to what we argue is an unreasonable determination of the facts because they conflate all of these and really only address one offer, which is the December pretrial offer, and do not disentangle these offers and evaluate each offer independently, which we think is necessary in this case. Thank you. We'll get you back on rebuttal. I know we've gone way over. Thank you. Mr. Johnson. Your Honors, if it pleases the court, let me ask, can you hear me all right with this microphone? Yes, sir. Thank you. My name is D. Peter Johnson. I'm the district attorney of Union County. I represent the superintendent of SCI Somerset, the attorney general of Pennsylvania, and myself. I'm here on behalf of the appellees to argue against this court, or against the idea of granting a habeas petition to this defendant. I think it's important, having heard your questions, to provide a little factual background that will help you understand the procedures in our county that affect your understanding of the use of our terms, et cetera. The first thing I want to say is that on this issue of an open plea, where that comes up in the record, that question was put to Mr. Souters by me. I used the word, did you tell him it was still open, meaning it was open to acceptance. Available. Exactly. Exactly. Well, if it weren't available and it had to be an open plea, a plea to all counts, then it couldn't be 8 to 20. Well, I can explain. This is important to understand. This factual aspect that I'm about to explain, if you give me a moment, will help why the issue is what we're talking about. It was a fry issue. Communication only was what was raised below. And it was only raised below about the December 13 immediately to trial offer, where we came into my office with counsel. But I'll get there in a second. They've raised the July 6 offer, which occurred in my office between myself and Mr. Souters. In the natural process of business in our office, we would meet with all the attorneys prior to what is normally a plea pretrial date in front of the court. So it was a pretrial conference between counsel and myself in my office at some date prior to a pretrial date in front of the judge, where they say, we're going to trial or not, or we're going to plea. So on July 6, I gave that offer to Mr. Souters. A person, a defendant, can accept that offer and enter a plea prior to jury selection without any issue with the judge, without any policy issues with the judge. So in this situation, we made the offer. As Mr. Souters indicated, he conveyed that to his client. They had several omnibus motions pending, including the writ of habeas corpus on the sufficiency issues, all the issues that he's worked on through these many years, including the effort to strike out the DNA. That was his body search. They attacked the affidavit of probable cause. That was still pending. It was actually held in July and was actually, all those were denied. So after that point, he was ordered to jury selection in October. We pick our juries for all of our cases on one or two days, and then all the dates for trial are then at some point in the future over the next three or four months. So in October, I think it was 14th, we pick our juries. It's after that date that Judge Wolfel's policy takes place. If the person didn't plead prior to that date, his policy takes place, and if the person's going to plead, they have to plead open. So the only offer that this applied to, that is the judge's policy, was the offer that the Commonwealth made through me to Mr. Funk on the day of trial before the jury was sworn. And we had a conference with the judge, a conference with counsel, a conference with the judge, that he would waive his policy and take a plea, thereby canceling the trial in the process, indicating because he would take the plea that he would be accepting it. And then we met with Mr. Funk in my office with the affidavit officer, Bill Knights, his attorney, Mr. Souters, myself, and, like I said, Mr. Funk. And that meeting took place when? Pardon me? That meeting took place when? December 13th, the morning of the beginning of the trial, prior to the jury being sworn. And as we testified to in court and as was accepted as credible by the court below, that offer was conveyed to him with clarity and with explanation, including looking at the guidelines as to the other charges and the other potential sentences. Where I said to him, myself, that it was 8 to 20, that the judge would accept it with his counsel present. And he looked at me and said, we're going to trial. The idea that, notwithstanding the idea that... And what was your understanding of the reasoning? Pardon me? What was your understanding of the reasoning as to why the statement was made, we're going to trial? Why Mr. Funk was doing that? Because he is a personality that is in charge of all things, all the time, everywhere. And in his mind, he believed that he could win this case. And if not at trial, he could win it on appeal. Because he believed he had arguments in regards to all of the charges against him. And just to make sure I understood, because I may have misstated it, the open plea policy of the trial judge would have taken effect in effect from October to the trial starting in December? Correct. Okay. And at the time that this plea was offered to him, it was a go or no-go situation. There had been lengthy discussions with the defendant over the months of this case with other attorneys, with these plea offers, coming right down to this point. It was like, here it is. Take it or leave it. If we go to trial, we're done. My whole purpose and the reason that I think that this particular rule of law is so difficult to me as a prosecutor is, if you granted this relief, we don't get our benefit from the plea agreement, which was, I don't have to put this poor woman on the witness stand and put her through the testimony in this process. That's what I wanted. And he, to use vernacular terms, just blew that off. Much like the same attitude that he did what he did. It's all consistent. The record itself, which the Judge Hudock saw him in court and saw the record that we had, he had gone through two or three attorneys already. He argued with his PCRA attorney until he went to standby. And he wanted to drive the bus. And he was always driving the bus along the way. And at this meeting, where he was fully informed about what this plea was, with his attorney there, absolutely refused it. And the idea that he is saying now, especially when he said, I remember the day that I was talking with him. And I was talking to him by saying, you know, look where we're at now. Do you remember this day? And he just did his thing. No, no, I don't remember. I never knew that. That's not possible. That never happened. And that's what he put in the record. In the motion below that he made to amend, it's important to note at J301, 302, the only issue that he raised below was whether or not this particular plea offer, this 8 to 20, that the Judge had accepted, that the Judge would waive his policy, the Judge would accept, that he had to do it before the trial convened, before the jury was sworn, was not communicated to him. And I think his argument maybe goes a little further in saying not so much that it wasn't made to him, but it wasn't explained and he didn't get advice from his counsel as to what that purportedly meant. I'll read this. Grant leave to add one claim to the amended PCRA petition alleging counsel's ineffectiveness in failing to inform the defendant of the 96-month plea offer and the court's willingness to accept that plea. That's the amendment. Sounds like a Frye issue, not a Lafler issue. Exactly. That's your point. That's exactly right, Judge. And the point being in regards to this format that we have in our courts is the issue of the Judge's policy only came to bearing for that December offer. There were no other offers between October and December 13. It was July 6, 2000. And a reoffer then. And then an offer on the day of trial. And that's the one to which the Judge's policy would apply because we'd been beyond jury selection. That's the only reason we had to go to the Judge and get that approval. And that's why we had a face-to-face with him with full knowledge, full discussion, and his knowing rejection of it completely. And was the offer explained to him by you or by Mr. Suitors or by both of you? During this meeting, all I could speak to was myself. It was explained to him by me in this meeting with Mr. Suitors present. That it was 8 to 20 with one count? Yes, one count. After trial began, after trial, the jury was sworn, the issue of the Judge's policy was it was open pleading. If he wanted to stop the trial and enter a plea, it had to be open again. Because we had that waiver for that moment. And like I said, it was go time. And that's the important aspects of the factual understanding of our procedure that help understand the issue that he raised below that only applied to this one offer. There was no offer during trial. There was no further offers after that point. So the idea that there was a third offer that had to be explained or there was misinformation, et cetera? No, I think the argument there was he was concerned about his counsel's performance and wanted to know if the offer was still open. Well, it wasn't. So what he conveyed to him was correct. It had to be an open plea at that point. Okay. Any further questions? Judge Phipps, any further questions? No. Thank you very much. Thank you, sir. And I appreciate your understanding and accommodation to my needs. Not a problem. That's what I would expect from me, so it's got to be good for you too. We're all going to get here one time or another. Ms. Ferguson. Your Honors, three points on rebuttal. First, with regards to the July offer, the reason we don't think that Sugar's testimony, that he conveyed all the offers is just to help. Let's go to the December offer. So we're on the eve of trial. You're being told that the judge is willing to waive the open plea policy, that the offer is a one count and it's a sentence of eight to 20. What else needs to be explained? We think that it needs to be explained. What else could be explained? It's one count. I mean, if I were the counsel, I would say to him, understand, you only wanted to plead a one count. Guess what? You are only pleading to one count. And the eight to 20 that six months ago we talked about is still on the table. You've got very few minutes to think about this before we go into trial. What are you going to do? Your Honor, perhaps that would have worked. We don't have that in the record, that Sugar's was, in fact, that clear. What we have is that during this final offer, he did not accurately. But he's in the room with Mr. Johnson. Mr. Johnson's explaining that this is the offer, and he's also giving you the reason why. He doesn't want the victim to have to testify in this tragic situation. So I understand you're referring to the pretrial offer in December. As to that, we see two problems. First, there is an information deficit where Johnson, but what matters here is Souters, knew that the judge waived the policy and, again, did not communicate that. And to your earlier point about where we find this in the record, I'd point you to Joint Appendix 232 and Joint Appendix 286 to 288, where Souters acknowledges that the policy was waived, but Funk, again, did not. And Funk had made clear the importance of not pleading to certain counts, and Souters failed to tailor his advice to that. And so here, this goes to our Lafleur Hill Padilla argument that there was, in fact, no advice. And, second, Souters was never provided the opportunity or, sorry, Souters never provided Funk with the opportunity to ask questions, to have advice. As District Attorney Johnson acknowledged, there was no break in that conversation. What question and what advice would he – what questions would he ask and what advice do you anticipate he should have been given? At first, he should have – Souters should have explained that the policy was waived and, in fact, what the common – But isn't – I mean, Funk had already been through some familiarity with the plea process, and he was told one count, eight to 20. I mean, what – do you have to say the judge didn't waive his policy on open pleas? Because when you say one count, that necessarily means you aren't going to plea to the other counts, right? Yeah, you don't have to know there's a waiver. You just have to know it's one count, which is the thing he wanted to be all and end all from the beginning. Your Honor, what matters here is that our client was particularly concerned about this policy. He put an emphasis on not pleading to different counts. He's now told – So if he was particularly concerned, why isn't one count good enough for a person who's particularly concerned about an open plea policy to be told, it's one count. Because when Judge Hardiman asked that question a while ago, he said, can you have both? And the answer is that's a pretty deep imponderable, how you can have a one-count open plea. I'm not sure that's possible. And if your client is concerned about it and he gets an offer of one count, it seems that his open plea concerns have to go to the wayside, no? No, Your Honor, we don't think so. And we think it's important to remember our client didn't go to law school. He did not understand fully what was happening. And he's sitting in a position thinking that this judge's policy is going to be into play so that whatever offer – Vaccine Quanon is one count. He's now being told it's one count. Who cares if there's a waiver of the judge or not? I mean, he could have just as easily asked the question, are you saying the judge is willing to waive it? He claimed he didn't even know that there was an open plea policy of this judge at one point. At this point, end stage, one count, 8 to 20. You're getting exactly what you want. Take it or leave it. I guess we're going to trial, which says. Your Honor, again, we rely on the testimony that our client did not know that the policy was waived. And what matters here is that there was – But what difference does it make? What difference – I mean, I accept or, geez, I guess that's – okay, one count. I get what I want. I don't have to plead to all of them. Is that correct? You could have asked that question. Your Honor, there was no opportunity for Mr. Funk to ask that question. As District Attorney Johnson testified, there was no break in this conversation, no opportunity for Mr. Souters to provide Mr. Funk with advice, which was necessary. If you look to best practices, attorneys have these conversations with their clients in private. This is not a person lacking in intelligence. This is a fairly sharp guy. And the one thing he wants, he's getting one count. It's almost like saying you win the game regardless how – do you have to explain to me how you win? No. You win the game. Your Honor, we rest on our understanding of the record, which is that he did not understand this regardless of, you know, whatever intelligence – What didn't he understand? The judge had an open plea policy that was unsure whether it was being waived. He now knows that the bottom line is it's going to be one count, which is what an open plea waiver would do. He got what he wanted. Correct, Your Honor, but he didn't understand that this was actually a viable option. And does the trial court say that he didn't understand this was a viable option, or does the trial court say that they believe that Mr. Souter's and Mr. Johnson are more credible? We think that the record demonstrates that our client didn't understand. We think that – How does the record demonstrate that? So, yeah, I mean, Souter's deficiency apparently seems to be that he didn't say afterwards this is a viable option. If he would have said that, then I guess you would say that he would meet the LAFRA problem. That's all I need to say. This is a viable option. No LAFRA problem then. Your Honor, we think more – That's what your client didn't understand. He just said that that's not – your client didn't understand that this was a viable option. So, despite hearing it directly from the DA himself, the client didn't understand this is a viable option. And so Souter's deficiency, where you claim he was ineffective, was because after the DA made that offer, he didn't say that's a legal and viable offer. Had he said that, he would have not fallen below the minimal standards of competency. But by not saying that, he did fall below the minimal standards of competency that we – the performance prong of Strickland? That's your point? No, Your Honor. We think more is required. That is part of it. But as the Supreme Court has acknowledged, counsel has a responsibility to advise the client as to the advantages and disadvantages of a plea offer to offer their informed opinion, especially in matters of particular importance to their client, especially when that is known, as it was in this case. And Souter's affirmatively rejected the opportunity to provide Funk with that comprehensive advice. So it is not just the fact that he didn't say that it's a viable offer. He had to, in fact, explain that. All right. Thank you very much. Thank you. Thank you to both counsel. I very much appreciate the Yale Law Clinic and Mr. Burley helping us out on this matter, for which a certificate of appealability, as I recall, was granted. It's a real pleasure to have you with us today. We'll take the matter to the advisory.